IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 10, 2014

IN RE MIRACLE F. H.[1]

Appeal from the Juvenile Court for Bradley County
Nos. J08408    Kurt Andrew Benson, Judge[2]

No. E2014-01508-COA-R3-PT-FILED-APRIL 1, 2015

This is a termination of parental rights appeal brought by the mother. The trial court found clear and convincing evidence to support termination of the mother's parental rights on the statutory grounds of abandonment for failure to visit, abandonment for failure to remit child support, and that mother substantially failed to comply with the requirements of the permanency plans. The court also found that termination of the mother's parental rights was in the best interest of the child. The mother appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Lisa Ashley McLain Gaither, Chattanooga, Tennessee, for the appellant, Crystal M. H.

Herbert H. Slatery, III, Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

---

[1]This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

[2]Denoted in record as "substitute judge."

# OPINION

## I. BACKGROUND

This family's involvement with the Tennessee Department of Children's Services ("DCS") began on November 2, 2011, when Miracle F. H. ("the Child") was removed from the home of her father, Dale H. ("Father"). DCS received a referral with allegations that the Child had been forced to participate in Father's suicide attempt. The mother of the Child, Crystal M. H. ("Mother"), was not a placement option at that time due to her transience and methamphetamine abuse.

On April 19, 2012, by agreement of the parties, the Child was declared dependent and neglected and placed in DCS custody. The permanency plan required Mother to: undergo an alcohol and drug assessment and follow its recommendations; submit to random drug screens; not associate with drug dealers or users; keep all medications, knives, and sharp objects away from the Child; notify the appropriate authorities if the Child attempts to harm herself; not expose the Child to any type of traumatic episodes; resolve all legal issues and not incur new charges; obtain appropriate housing; and comply with all court orders, including child support orders.

On September 9, 2013, DCS filed a petition to terminate Mother's parental rights. A trial was conducted on April 24, 2014. Rita Eastmond, a licensed professional counselor with Youth Villages in Arlington, Tennessee, testified that she had worked with the Child since February 2014. According to Ms. Eastmond, the Child had a history of self harm. She noted that the Child had been doing better recently, but had bit herself on her thumb a few days prior to the trial. At the time of the trial, the Child had been in residential treatment for more than a year and a half.

Ms. Eastmond observed that the Child and Mother had family counseling sessions telephonically. During these sessions, Mother promised to visit and send packages to the Child, but never has. The Child, however, places great importance on her relationship with Mother and enjoys talking to her.

Mother, 34 years old at the time of the hearing, related that she had a history of methamphetamine abuse that escalated when she began the process of separating from Father. She noted that during the separation, she was living in various places away from her children[3] and was unable to see them very often. When the children came into state custody, DCS notified Mother, who was living in Virginia at the time. Between the time of her

---

[3]The Child's brother was returned to Father in 2013.

separation and the removal of the children into state custody, Mother recalled speaking to the children maybe once "on a good month."

Mother told the trial court that she attended an intake for substance abuse counseling at Mount Rogers Community Counseling in December 2011, but subsequently failed to attend the recovery support services that began a week later. The facility thereafter attempted to contact Mother, but upon receiving no response, closed her case. On January 17, 2013, Mother failed a hair follicle drug screen, testing positive for amphetamine/methamphetamine. She also admitted that from 2011 until trial, she continued to associate with drug dealers and bought and used drugs.

Mother confirmed that in August 2012, she was ordered to pay child support, but only made payments in April 2014, immediately preceding trial. She admitted that she was charged with assault and battery in the summer before trial, and while those specific charges were later dismissed, she was also charged with failure to appear and a capias was issued against her. This led to a probation violation for failure to report on time, for which she was arrested on a fugitive warrant.

Shortly before trial, Mother claimed that she had undergone an alcohol and drug assessment and a mental health intake. She contended that she had an appointment with a realtor the day after trial to obtain appropriate housing. In regard to the permanency plan, Mother could only confirm that she kept in contact with Candace Milligan, the DCS family services worker.

According to Mother, she visited the Child in Memphis four or five different times. DCS and Youth Villages provided her gas cards and a room to stay in during these visits. Despite this assistance, Mother blamed her lack of visitation on her finances. She acknowledged, however, that she was able to get money to purchase methamphetamine.

Candace Milligan, the DCS family services worker, testified that she began working with the Child in 2011. According to Ms. Milligan, Mother initially would contact DCS regularly, but her communication waned once the unkept promises were made to the Child. At one point, Mother's whereabouts were unknown, and from July 2013 until December 2013, she did not visit the Child. Ms. Milligan testified that when she would remind Mother about the permanency plan requirements, especially the alcohol and drug assessment, Mother would tell her that "she has it done, she has it completed, she has her A &D done here," but never provided proof. Ms. Milligan confirmed that Mother had not complied with the permanency plans.

According to Ms. Milligan, the Child was depressed recently because she is ready to leave her residential treatment facility but no placement has been located for her due to her specific needs. Had Mother completed the permanency plan, the Child could have been placed with Mother.

In a letter written by the Child, she stated her aggressive and self-harm behaviors have been getting better with treatment. In the letter she pleads

> "[p]lease help me get a foster home or get adopted. I am ready for adoption or a foster home. I don't do physical aggression as much. I don't self harm as much either. And I would like someone to love like they would anybody else."

In regard to her relationship with Mother, the Child asserted: "I don't know what kind of parent I need because I am not used to having parents. Adults that are not too strict but tell me the truth are helpful. (I have staff that are helpful. . . .)." Ms. Milligan opined that the Child "doesn't trust her mother[] [and] knows that whatever she says that it's probably not going to be the truth. She prepares herself for whatever [Mother] tells her, that it will just be a let down." According to Ms. Milligan, when Mother promises the Child something and does not deliver, the Child regresses and begins self-harming.

On July 15, 2014, the court terminated Mother's parental rights. Specifically, the court determined that Mother substantially failed to comply with the requirements of the permanency plans and abandoned the Child by failing to visit and support her. The court also determined that termination of Mother's parental rights was in the Child's best interest. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issue raised on appeal by Mother as follows:

Whether clear and convincing evidence supports the court's finding that termination of Mother's parental rights was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App.

1988).  This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).  "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)).  "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).  Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97.  A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c).  "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).  The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003).  This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004).  It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

The record before us clearly and convincingly shows that Mother abandoned the Child by failing to visit her and likewise failed to comply with the requirements of the permanency plan. Mother's sole argument on appeal challenges the trial court's determination that termination of her parental rights was in the Child's best interest. This court has previously stated that a party's failure to argue an issue in the brief constitutes a waiver of the issue. *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011). *See In re Kyla P.*, M2013-02205-COA-R3-PT, 2014 WL 4217412, at *3 (Tenn. Ct. App. Aug. 26, 2014)("Because [parent] did not present an argument that the juvenile court erred in finding statutory grounds for termination of . . . parental rights, any such issue is waived. Therefore, we address only the issue raised on appeal, whether the termination of [parent]'s parental rights is in [the child]'s best interest.").

After a court has found by clear and convincing evidence that statutory grounds exist to terminate parental rights, that court must also find that the termination is in the child's best

interest. Tenn. Code Ann. § 36-1-113(c)(2). To make the latter finding, the court must consider, but is not limited to, the following:

1. Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

2. Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

3. Whether the parent or guardian has maintained regular visitation or other contact with the child;

4 Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

5. The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

6. Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

7. Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

8. Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

9. Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to §36-5-101.

Tenn. Code Ann. § 36-1-113(i).    Our   Supreme Court recently observed that "in a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent."   In *In re Kaliyah S.*, No. E2013-01352-SC-R11-PT, 2015 WL 273659, at *18 (Tenn. Jan. 22, 2015).

As we have noted previously, the list above "is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005).  Our legislature also has stated that "when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected and, to that end, this part shall be liberally construed." Tenn. Code Ann. § 36-1-101(d).

Here, the best interest analysis weighs heavily in favor of terminating Mother's parental rights.  Mother has failed to remedy her issues with methamphetamine abuse and continues to incur criminal charges and probation violations.  The Child has been in custody over 29 months and Mother is just now addressing housing, drug treatment, and her mental status. She has only recently gone back to work.  She failed to maintain sobriety, housing, or income such that it would be safe to return the Child to her.  *See* Tenn. Code Ann. § 36-1-113(i)(7).

Likewise, Mother's failure to consistently visit the Child has eroded the parent-child relationship.  During the year and a half the Child has been in residential treatment, Mother has only visited her four or five times, despite being provided gas cards and lodging. Further, the unkept promises to the Child cause her to regress and continue her cycle of self-harm.  *See* Tenn. Code Ann. § 36-1-113(i)(3) & (4).

Under the facts of this case, Mother has not made lasting changes to her lifestyle or conduct, after reasonable efforts by the state.  The Child has remained in foster care since November 2, 2011, and Mother is unable to provide her with a stable home at this time. Mother has failed to maintain contact with the Child, and has failed to provide proof to DCS of housing or income needed to care for the Child.  *See* Tenn. Code Ann. § 36-1-113(i)(1) & (2).  Additionally, Mother has not paid child support for the Child's entire duration in state custody, except for token support in April 2014.  *See* Tenn. Code Ann. § 36-1-113(i)(9).

The Child is in a critical stage in her treatment. Her residential treatment is nearing an end, and Mother cannot provide a placement for her. The Child is ready for adoption and needs a level of care that Mother cannot provide. *See* Tenn. Code Ann. § 36-1-113(i)(5).

Accordingly, the trial court properly determined it was in the Child's best interest to terminate Mother's parental rights.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Crystal M. H.

_____
JOHN W. McCLARTY, JUDGE