# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 15, 2011 Session

## CHARLOTTE SCOTT FORBESS v. MICHAEL E. FORBESS

**Direct Appeal from the Chancery Court for Tipton County**
**No. 25859      James F. Butler, Chancellor**

---

**No. W2011-01105-COA-R3-CV - Filed December 9, 2011**

---

This case involves the valuation of assets for division of marital property and alimony. Wife filed for divorce, seeking an equitable division of the marital assets, including Husband's one-half interest in a real estate partnership. At trial, each party introduced experts to testify as to the value of Husband's interest in the partnership. The trial court valued the partnership at a fair market value that was between the values testified to by the experts.  The court awarded Wife one-half of the value, awarded Wife one-half of a note that was based on property Husband owned prior to the marriage, and awarded Wife alimony. After a motion to alter or amend, the trial court reduced Wife's interest in the partnership and the note to take into account Husband's tax liability. Wife appeals, arguing that the trial court erred in valuing the partnership and in its alimony award. Affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Charlotte Scott Forbess.

Thomas D. Forrester, Covington, Tennessee, for the appellee, Michael E. Forbess.

### OPINION

### I. Background

Plaintiff/Appellant Charlotte Scott Forbess ("Wife") and Defendant/Appellee Michael

E. Forbess ("Husband") were married in June of 1990.[1] When they married, both parties had children from previous relationships. Although the parties were married for over twenty years, they had no children together.

Prior to and during the first several years of the marriage, Husband worked installing insulation for commercial and industrial buildings. While working as an insulation installer, Husband made contributions to a retirement plan, both before and during the marriage. Prior to the parties' marriage, Husband also entered into a partnership with his brother. The partnership, which was established primarily to buy and sell real estate, is called Forbess Brothers Partnership ('the Partnership"). The only asset of the Partnership prior to the marriage was the Smithville Mobile Home Park located in Covington, Tennessee, which was purchased on April 1, 1985. Prior to the marriage, the brothers made several improvements and expansions to the property. However, on January 2, 2004, the brothers sold the Smithville Mobile Home Park for $472,712.00 in cash, along with a $275,000.00 promissory note ("the Smithville Note") to be paid in installments of $2,320.61 per month until January 2019. The cash proceeds of the sale were divided equally between the brothers; likewise, the payments made under the Smithville Note are also divided between the brothers. Husband used the cash proceeds to buy the marital home and to make improvements to it, to give gifts to both his and Wife's children, and to set up an annuity. After the sale of the Smithville Mobile Home Park, Husband retired from his previous job and lived entirely off income generated from the Partnership.

During the parties' marriage, the Partnership acquired several other assets, including an undeveloped portion of commercial land at the Shelby-Tipton County line, called the Hunter property, another mobile home park, referred to as the Westside Mobile Home Park, and two office buildings in Covington, Tennessee. Later, the brothers entered into a lease-purchase agreement for the Westside Mobile Home Park; the agreement provided that the lessee would pay the Partnership $46,840.64 per month until 2027, again to be divided equally between the brothers. During, or at the end of the lease period (subject to a 3% prepayment penalty if exercised in the first five years of the lease), the lessee has the option to purchase the property for $5.6 million, less the amount already paid. At the time of the trial, a balance of $5,214,615.99 remained on the lease-purchase agreement.

At the time the parties married, Wife had recently quit her job as a factory worker due to surgery to correct her carpel tunnel syndrome. During the first half of the parties' marriage, Wife worked, without drawing a salary, at the Smithville Mobile Home Park, performing general maintenance and administrative tasks for the property. However, once the Smithville Mobile Home Park was sold, neither Wife nor Husband continued to work

---

[1] The parties cannot agree as to whether they were married on June 20, 1990 or June 28, 1990.

outside the Partnership. Wife suffered from various illnesses throughout the marriage, including carpel tunnel, severe back pain, tremors, and high blood pressure, which she testified kept her from working after the sale of the Smithville Mobile Home Park. At the time of trial, many of these afflictions had been remedied; however, Wife testified that she could not obtain gainful employment due to her continuing back pain and the fact that she had no marketable skills.

After an altercation at the parties' home in 2008, where Wife alleged that Husband became violent toward her, dragged her throughout the marital home, and kicked her, Wife filed for divorce on March 6, 2008, alleging inappropriate marital conduct and irreconcilable differences. On March 11, 2008, Wife was granted a temporary injunction against Husband, which restrained Husband from having any contact with Wife. Wife filed an affidavit of income and expenses on March 28, 2008. Wife listed no income on the affidavit, but included $2,588.00 per month in expenses, including a $658.00 per month note on the recreational vehicle that she lived in immediately after the separation and $720.00 per month for medical expenses not covered by her insurance and not including the estimated $75.00 per month Wife paid in co-pays.

For several months, Husband apparently remitted to Wife one-half of his income from the Partnership, though nothing in the record indicates that he was under a court order to do so; however, on October 6, 2008, Wife filed a Motion for Hearing on Temporary Support, averring that she had been receiving monthly payments from Husband, but that Husband had reduced the payments with no explanation and that it had come to her attention that Husband was dissipating marital assets. The record does not indicate that a hearing was ever set on Wife's motion.

Husband filed his answer and counter-complaint for divorce on August 6, 2008, likewise alleging inappropriate marital conduct and irreconcilable differences. Because neither party wished to retain the marital home, which Wife vacated after the March 2008 altercation, the parties filed a Motion to list that property for sale on September 10, 2009. Husband filed his own affidavit of expenses on September 20, 2010. In the affidavit, Husband listed a total income of $11,162 per month and expenses totaling $7,726.00 per month, including $500.00 for health insurance, $563.00 for medical bills, $830.00 for a car payment, and $2,100.00 for taxes.

The trial court held a hearing on the divorce on September 20–21, 2010. During the hearing, both parties introduced experts who testified as to the fair market value of Husband's interest in the Forbess Brothers Partnership (although Husband claims that the Smithville Note is his separate property, Husband did not claim that the Partnership itself, including the assets owned by the Partnership as the time of trial, was separate property).

-3-

Wife's first expert, Michael T. Orman, a certified general appraiser with Statewide Appraisal Service, testified that he valued the property owned by the Partnership using comparable sales in the area. Under this approach, Mr. Orman testified that the Hunter property had a fair market value of $630,000.00 and the Westside Mobile Home Park had a fair market value of $4,485,000.00. Wife's next expert, Joseph Babb, a certified public accountant and certified valuation analyst with Eaton Babb Smith, then used these figures and the asset approach[2] to value Husband's one-half interest in the Partnership as a whole based on the fair market values of the property owned by the Partnership, including the two Covington commercial buildings, which he appraised at $338,670.00 combined. To value Husband's interest in the Partnership under the asset approach, Mr. Babb added up the fair market value of all the Partnership properties, subtracted all the Partnership's liabilities, and divided the resulting number by two to represent Husband's one-half share. Taking Husband's interest in the property, Mr. Babb then declined to apply a discount for lack of control,[3] and only discounted the value by 10% based on lack of marketability.[4] Thus, Mr. Babb concluded that the fair market value of Husband's interest in the Partnership is $1,150,000.00.

Husband employed several experts—some to appraise the property owned by the Partnership and one to value Husband's one-half interest in the Partnership as a whole. According to Van Emerson Boals, a certified general appraiser with Real Estate Appraisers and Land Surveyor, the Westside Mobile Home Park has a fair market value between $3,650,000.00 and $4,170,000. Husband's next expert, Thomas A. Ivy, a certified public

---

[2] Mr. Babb's report defined the asset approach as follows:

The asset approach calculated the value of a business, business ownership, or security by using one or more methods based on the value of the assets of that business net of liabilities. The approach is often used for companies holding real estate or other large assets in a non-operative environment.

[3] Although Mr. Babb ultimately did not apply a discount for lack of control, he did explain the application of the discount, stating in his report, "[t]ypically, a lack of control is applied to a minority (less than 50%) interest to reduce the interest's value due to the owner's inability to exhibit control over the entity." Mr. Babb concluded that because Husband's share was not a minority share, representing 50% of the company, the lack of control discount did not apply in this case.

[4] Defining lack of marketability, Mr. Babb's report explained:

A discount for lack of marketability/liquidity is commonly appropriate to reflect that an interest in a closely-held entity is less attractive and more difficult to sell than an interest in a publicly traded entity. Accordingly, an interest in a closely held entity lacking marketability/liquidity will generally sell for less than an identical interest in a defined and active market.

accountant and accredited business valuator used the appraisals of other experts, as well as tax assessment appraisals, to determine the value of Husband's interest in the Partnership. Mr. Ivy concluded that the Westside Mobile Home Park has a fair market value of $3,985,000.00, that the Hunter property has a fair market value of $475,000.00, and that the Covington commercial properties have a total fair market value of $287,584.00. Based on these values, Mr. Ivy valued Husband's interest in the Partnership at $610,000.00 using both an income approach[5] and an asset approach, and discounting 35% for lack of marketability, lack of control, as well as deferred tax issues that will affect Husband's income from the Partnership.

Wife testified about the night in early March 2008 when Husband allegedly kicked her and dragged her from the marital home. She also testified that she worked for fourteen years at the Smithville Mobile Home Park, generally running the park, without pay, but that she did not return to work after the sale of the park due to her various medical issues. Wife also testified that, although she suffers from severe back pain, she had not sought medical help because of the high cost of her insurance deductible. Wife never completed high school and, when asked whether she could be rehabilitated and seek employment, Wife answered in the negative.

Husband admitted that there was an altercation on March 8, 2008, though he denied that he kicked or dragged Wife. Further, Husband testified that his income had decreased over the period of separation due to the fact that a portion of his income came from payments for mobile homes that he had sold separate from the Partnership, which debt had been satisfied during the pendency of the divorce. Husband testified that the income listed on his affidavit of income and expenses was not accurate and that his actual income was $11,662.00. Husband also clarified that his expenses included insurance premiums for Wife that he would no longer be required to pay after the divorce, insurance premiums for himself that were actually paid by the Partnership, and a car payment which may have been paid by

---

[5] Husband's expert did not define the income approach in his report; however, in concluding that the income approach was not applicable because the Partnership mainly consisted of real property, Mr. Babb did define the income approach:

> The income approach determines the value indication of a business, business ownership interest, security or intangible asset using one or more methods that convert anticipated benefits into a present single amount. . . . The income approach, which is most often used to value operating companies, uses a risk-based approach to evaluate the impact of various factors on earnings and/or cash flow.

the Partnership.[6] According to Husband, his income came from both the lease-purchase of the Westside Mobile Home Park ($10,500.00 per month, which would continue for approximately seventeen years) and from the Smithville Mobile Home Park ($1,162.00 per month, continuing for approximately seventeen years), which was paid separately from Partnership distributions, though Husband argued that the Smithville Note was his separate property because he owned the Smithville Mobile Home Park prior to the divorce. Husband further testified that he had begun receiving social security benefits. Husband also testified as to the value of the marital home, the annuity purchased with the Smithville sale proceeds, and various cars and motorcycles owned by the parties.

At the conclusion of proof, the trial judge declared the parties divorced, but reserved ruling on other issues until he had time to consider the testimony and exhibits. The trial judge issued his written Decree of Absolute Divorce, including findings of fact and conclusions of law on October 8, 2010. The court declared the parties divorced pursuant to Tennessee Code Annotated Section 36-4-129[7] and awarded Wife a portion of Husband's retirement benefits based on the court's conclusion that Husband was employed for 7.5 years during the parties' marriage. Because neither party wished to retain the marital home, the judge ordered that the home be sold and the proceeds divided equally. The judge also divided the various vehicles and accounts owned by the parties.

The court further ruled that the Smithville Note was marital property, stating that the "property has been transmuted over the period of years they have been receiving it and utilizing it's funds for marital purposes." The court then ordered that Husband transmit 50% of the Smithville Note to Wife each month, noting that this payment is a division of marital property, rather than alimony.

---

[6] It is difficult to discern from Husband's testimony whether the car payment was additional compensation from the Partnership or whether the car payment came from Husband's draw from the Partnership but was remitted to the loan company directly from the Partnership.

[7] Tennessee Code Annotated Section 36-4-129 states:

(a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.

(b) The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

After considering the expert testimony, the trial court concluded that the fair market value of Husband's 50% interest in the Forbess Brothers Partnership was $750,000. The court specifically noted that the valuation method employed by Wife's expert was more subjective than the method employed by Husband's expert, although the court reduced Mr. Ivy's discount from 35% to 20%, finding that the expert's discount was too conservative given "the risk factors associated with the properties owned by the partnership" and the fact that the Partnership is on "sound footing financially." The court awarded Wife 50% of the Partnership, or $375,000. In order to pay this award, the trial court ordered Husband to transmit to Wife one-half of his distributions from the Partnership each month, until the balance of $375,000 has been paid, though the court noted that this remained a marital property division, rather than an award of alimony.

The court then awarded Wife $250.00 per month in alimony *in futuro* until Wife's death, remarriage, Husband's death, or a substantial change in circumstances. In making this award, the court specifically noted that Husband already received his social security benefits, while Wife worked without salary for fourteen years at the Smithville Mobile Home Park, which would affect her social security benefits when she became eligible; the court also considered Wife's need and Husband's ability to pay. The court further imposed a judicial lien on Forbess Brothers Partnership to secure the payment of alimony in the event of Husband's untimely death.

Finally, the court denied Wife's request for attorney fees, noting that Wife was awarded substantial assets in the divorce, some of which were cash assets and others ongoing payments.

Husband filed a motion to alter or amend on November 29, 2010, arguing that the trial court miscalculated the number of years Husband was employed while married, that the Smithville Note was separate property, and that the court's valuation and division of the Partnership and the Smithville Note failed to take into account Husband's estimated 20% tax liability per year on the income. Wife filed a response on February 24, 2011, denying the material allegations contained therein. After a hearing on February 2, 2011, the trial court entered an order on April 12, 2011, altering the portion of Husband's retirement benefits awarded to Wife to reflect the actual 5.75 (rather than 7.5) years Husband had worked during the marriage.[8] The court also denied Husband's request to alter the court's ruling that the Smithville Note was marital property. Finally, the court reduced Wife's portion of Husband's interest in the Forbess Brothers Partnership and the Smithville Note by 20% to take into account the 20% tax liability that would be paid by Husband. Wife appeals.

---

[8] Wife does not take issue with this ruling on appeal.

## II. Issues

Wife raises the following issues:

1.      Whether the trial court erred in the division of marital property?
       a.    Whether the trial court erred in awarding Wife $375,000.00 in lieu of a property interest in the Forbess Brothers Partnership?
       b.    Whether the trial court erred in ordering Wife's marital property award to be paid from periodic disbursement of income from the Partnership?
       c.    Whether the trial court erred in ordering income taxes be deducted from Wife's cash award in lieu of interest in the Partnership?
       d.    Whether the cash award to Wife representing discounted cash value of interest in the Partnership is subject to income tax?
       e.    Whether the trial court considered all partnership property ownership in the division of property?
2.      Whether the trial court erred in awarding Wife $250.000 per month to Wife as alimony *in futuro*?
3.      Whether the trial court erred in failing to award Wife her attorney's fees?

## III. Division of Marital Property

The division of marital property, including its classification and valuation are findings of fact. ***Woodward v. Woodward,*** 240 SW3d 825, 828 (Tenn. Ct. App. 2007). Trial courts have "wide latitude in fashioning an equitable division of marital property." ***Altman v. Altman***, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). Accordingly, the trial court's decisions regarding classification, valuation and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. ***Farrar v. Farrar***, 553 S.W.2d 741, 743 (Tenn. 1977).

As a preliminary matter, we note that Tennessee Rules of the Appellate Court Rule 7 requires that, in all cases where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property. Tenn. Ct. App. R. 7. Rule 7 also requires that "[e]ach entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found . . . ." In the recent case of ***Harden v. Harden***, No. M2009–01302–COA–R3–CV, 2010 WL 2612688 (Tenn. Ct. App. June 30, 2010), this Court discussed the Rule 7 Table:

This Court has previously held where an appellant fails to comply with this

rule, that appellant waives all such issues relating to the rule's requirements. This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property. This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7.

*Id.* at *8 (citations omitted). In explaining the necessity of the Rule 7 Table, we further stated:

[I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

*Id.*

While we may excuse Wife's failure to include a chart in her appellate brief, *see* Tenn. R. App. P. 2, we cannot overlook Wife's failure to cite any applicable law in her brief supporting her arguments regarding the division of marital property, other than the distribution of marital property statute, Tennessee Code Annotated Section 36-4-121. This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue."). Specifically, Wife cites no authority for her assertion that she should have been awarded a property interest in Forbess Brothers Partnership,[9] that the court's order that Wife's property

---

[9] Even if this issue had been properly briefed, it is without merit. Tennessee Code Annotated Section 61-1-501 states that an interest in a partnership cannot be transferred to a non-partner, voluntarily or

(continued...)

division be paid through periodic disbursement was in error,[10] that Husband's income tax liability should not have been considered in the division of property,[11] or that the trial court failed to consider all of the real estate owned by the Partnership in valuing Husband's interest in the Partnership.[12]

Because of Wife's failure to include a chart regarding the valuation of the marital asset at issue and her failure to cite any applicable law or argument for the issues presented in her brief, we conclude that all issues with regard to marital property are waived.

_____

[9](...continued)
involuntarily. Tenn. Code Ann.§ 61-1-501 ("Partnership property is owned by the partnership as an entity. A partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily.").

[10] The distribution of marital property statute specifically contemplates that, when making an equitable distribution of a business entity, such as this partnership, the court may order one party to make a distributive award of money to the other party in lieu of a property interest:

> (1) If, in making equitable distribution of marital property, the court determines that the distribution of an interest in a business, corporation or profession would be contrary to law, the court may make a distributive award of money or other property in order to achieve equity between the parties. The court, in its discretion, may also make a distributive award of money or other property to supplement, facilitate or effectuate a distribution of marital property.
> (2) The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.

Tenn. Code Ann. §36-4-121(f). A distributive award is especially appropriate when a partnership is deemed marital property, as the non-partner spouse may not take an interest in the partnership, as discussed *supra*, but only in the income generated from the partnership. *See* Tenn. Code Ann. § 61-1-501. In fact, the Revised Uniform Partnership Act specifically states that the income received from a partnership is personal property of the partner, which is transferrable. Tenn. Code Ann. § 61-1-502 ("The only transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions. This interest is personal property.").

[11] The distribution of marital property statute directs trial courts to consider "[t]he tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset" in making a marital property division." Tenn. Code Ann. § 36-4-121(c)(5)(A)(9).

[12] Unlike Wife, the trial court did include a chart of the marital property in its final order. The chart shows Wife's valuation of the Partnership, including the Westside Mobile Home Park, the Hunter property, and the two Covington, Tennessee office buildings. No law is cited for Wife's argument that the trial court failed to include all the property in its valuation, nor is there any indication in the record that the trial court failed to consider all of the Partnership property in valuing the asset.

In the body of Husband's brief, he also takes issue with the trial court's determination that the Smithfield Note was marital property subject to division upon divorce. In addition, he asks that Wife be required to reimburse him for the additional 20% of the Partnership income and the Smithville Note that were paid to Wife in 2010, prior to the trial court's order on the motion to alter or amend. However, Husband failed to include these issues in his statement of the issues on appeal. We may consider an issue waived where it is argued in the brief but not designated as an issue. *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002); *see also* Tenn. R. App. P. 27(b) (requiring that an appellee who requests affirmative relief must include "the issues and arguments involved in his [or her] request for relief" in the appellee brief ). Accordingly, we likewise conclude that Husband's arguments with regard to the classification of the Smithville Note and the remittance of 20% of funds paid in 2010 are waived.

## IV. Alimony

Wife takes issue with the $250.00 award of alimony *in futuro*, arguing that the statutory factors contained in Tennessee Code Annotated Section 36-5-121(i) favor a larger alimony award. Specifically Wife argues that: (1) Husband's earning capacity far exceeds Wife's; (2) Wife is older and has little education that would allow her to seek gainful employment in the future, while Husband has an ongoing business that will continue to be lucrative; (3) this was a long-term marriage; (4) Wife has several health problems, while Husband is in good physical condition: (5) the parties enjoyed a high standard of living during the marriage: (6) Wife worked in the home and Husband's business during the marriage; (7) Wife will lack health insurance after the divorce. In addition Wife argues that "Wife received little property [in the divorce] other than cash obtained from sale of marital assets."

The trial court's decisions regarding alimony are reviewed under an abuse of discretion standard. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105, 112 (Tenn. 2011). Alimony determinations are inherently factual in nature and require the trial court to balance many factors. *Id.* at 105. Our role is only "to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id.* We are to presume the correctness of the trial court's decision and review the evidence "in the light most favorable to the decision." *Id.* An abuse of discretion review must reflect "an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Id.* Thus, the fact that the reviewing court would not have made the same ruling is not relevant as long as the trial court's decision falls within the range of acceptable options. *Id.*

With these principles in mind, we cannot find an abuse of discretion in the trial court's alimony award. The court considered the statutory factors and made specific findings. In

-11-

addition, Wife's assertion that she received little property pursuant to the divorce is completely without support in the record; in addition to her portion of the marital home, a car, a motorcycle, a recreational vehicle, and half of the annuity owned by the parties, Wife received a distribution of $300,000 for her portion of Husband's interest in the Partnership, to be paid in installments of $5,250.00 per month for approximately six years, as well as $581.00 per month for the Smithville Note, which was to be paid until 2019. Reviewing the evidence in "the light most favorable to the trial court's decision," *Gonsewski*, 350 S.W.3d at 112, we see no indication that the trial court applied an erroneous standard or reached a patently unreasonable result.[13]

## V. Attorney Fees

Wife asserts that the trial court erred in failing to award her attorney fees at trial. However, Wife does not argue this point in the body of her brief, nor does she cite any authority to support her assertion. Accordingly, this issue is waived. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006).

## VI. Conclusion

The judgment of the Chancery Court of Tipton County is affirmed. Costs of this appeal are taxed one-half to Appellant, Charlotte Scott Forbess, and her surety and one-half to Appellee Michael E. Forbess, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[13] In Husband's brief, he states that the trial court's award of alimony was in error and argues that Wife should be awarded no alimony; however, Husband did not state this issue in his statement of issues. This issue is waived. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).