IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2015

**MICHAEL LEE YARLETT v. ROXANNE DEETTE YARLETT**

**Appeal from the Circuit Court for Davidson County**
**No. 07D3667     Phillip R. Robinson, Judge**

_____

**No. M2014-01036-COA-R3-CV – Filed June 5, 2015**
_____

Mother appeals the trial court's modification of the parties' parenting plan and designation of Father as the Primary Residential Parent. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Roxanne Deette Yarlett, Fairview, Tennessee, Pro Se

James L. Collier, Nashville, Tennessee, for the appellee, Michael Lee Yarlett.

**OPINION**

**Background**

Roxanne Deete Yarlett ("Mother") and Michael Lee Yarlett ("Father") were divorced on January 12, 2010, by entry of the Final Decree of Divorce on the ground of irreconcilable differences. The parties are the parents of the minor child ("the child") at issue, born July 2006.

Prior to the finalization of the divorce, the parties entered into an Agreed Parenting Plan, which was adopted by the trial court on October 20, 2009. In the Agreed Parenting Plan, Mother was designated as the Primary Residential Parent. The Agreed Parenting Plan provided that Mother would receive 300 days per year of parenting time with the child; Father would receive sixty-five days per year of parenting time. In this arrangement, the parties alternated which parent received parenting time during the holidays. The parties also agreed that Mother had sole decision-making authority for all major decisions regarding the child. Mother was ordered to maintain health insurance for the child. Father was ordered to pay child support to Mother of $489.00 per month.

This arrangement continued until March 26, 2013, when Father filed his Petition to Modify the Parenting Plan. In his petition, Father alleged that a substantial and material change in circumstances had occurred and that he should be named primary residential parent of the child. Specifically, Father alleged that Mother's living environment was unstable because she would often change residences and employment. At the time Father filed his Petition, he asserted that Mother was living with her mother.

Additionally, Father asserted that the child's environment was unstable because Mother often transferred him to different schools. Although the child was only in the first grade at the time of the petition, Father alleged that Mother has changed his school at least three times. The child, according to Father, often missed school or left school early. Father contends that the child often exhibits "cursive language" while at school and has assaulted a teacher. Father further stated that, rather than dealing with the child's behavioral issues, Mother "simply moves the child to another school." According to Father, at the time the petition was filed, Mother intended to begin homeschooling the child. Father also expressed a concern for the child's health. He alleged that the child is extremely overweight, but that Mother similarly refused to address this issue.

Also in his petition, Father asserted that Mother took actions to improperly limit Father's parenting time. According to Father, Mother has refused Father his parenting time during holidays and weekends. Mother also withdrew the child from cub scouts, an activity that Father stated he and the child enjoyed together. Last, Father contended that Mother often spoke negatively to the child about Father and his new wife.

Mother answered Father's petition on April 16, 2013. She generally denied any wrongdoing on her behalf. However, she admitted that she had enrolled the child in homeschooling and admitted that the child was overweight.

On April 8, 2014, the parties proceeded to trial on Father's Petition to Modify the Parenting Plan. The record does not include a transcript of the proceedings or a statement of

the evidence. The record does include, however, five exhibits that were introduced at trial. Among these exhibits is Mother's deposition, taken August 12, 2013. In her deposition, Mother testified generally about her living situation with her mother and about the child's behavior at school. She admitted that Father had been a good parent. She also testified that she had quit her job so that she could go back to school and obtain a degree.

Another trial exhibit in the record is the child's school records from second grade, the grade he was in at the time of trial. The records indicate that the child was present for ninety-eight schooldays, absent thirty-three schooldays, tardy four times, and dismissed early fifteen times. Further, the child's records show that he received nine "student referrals" for various negative behaviors, ranging from defying his teachers to angrily flipping over desks.

After hearing the proof and reviewing the exhibits, the trial court entered an order on May 6, 2014, designating Father as the Primary Residential Parent. The trial court made certain findings regarding whether a substantial and material change in circumstances had occurred so as to warrant Father being designated the Primary Residential Parent:

> The Court further finds that since the entry of the last Order, the Mother has moved on four (4) occasions, the minor child has changed schools six (6) times, depending on how the schools are counted, and has significant behavior issues at school. The Mother has indicated that the minor child is going to be tested for learning disabilities but none of that has been accomplished as of the trial in this matter.

> The Court finds that the minor child weighs 139 pounds although only seven and a half (7 ½) years old. The minor child has been the victim of taunting and bullying, because of his weight, from other children. The Mother testified that she did not think that minor child was eating bad or unhealthy foods.

> The Court further finds that the minor child has resisted the Father when the Father is attempting to exercise his parenting time.

> The Court further finds that the minor child refuses to sleep in his own bed at the home of the Mother although he does sleep in his own bed when he is at his Father's home.

> The Court further finds that Mother lied to the Court when she stated that she had never seen a psychiatrist. The Mother lied in

3

her deposition. Therefore the Court is forced to give no weight to the Mother's opinion and testimony in this case.

The Court further finds that the Mother interfered with the Father's relationship with the minor child by removing the minor child from scouts as a form of discipline because the minor child was not doing well in school. Both Father and son enjoyed this joint activity.

The Court further finds that the Mother exhibited poor judgment when she refused to allow the minor child to attend the Father's wedding to his new wife because she felt like that Father and the fiancé had not been dating long enough.

In addition to the above findings, the trial court examined each of the statutory factors in Tennessee Code Annotated Section 36-6-101 and concluded that an analysis of these factors showed Father to be the more fit and able parent and that none of the factors weighed in Mother's favor. Accordingly, the trial court found it to be in the child's best interest for Father to be designated as the Primary Residential Parent and Mother as the Alternate Residential Parent. Father was also awarded decision-making authority regarding the child's education, non-emergency healthcare, and extracurricular activities.

The trial court's order also addressed Mother's child support obligation as Alternate Residential Parent. The trial court found that Mother was voluntarily unemployed and imputed as income the amount she earned at past employment. This order projected Mother's child support obligation at $380.00 per month. Last, the trial court order directed that the case be reset for August 21, 2014 to determine the cost of any work-related child care and health insurance premiums incurred on behalf of the minor child.

The final hearing in the trial court occurred August 21, 2014. Mother failed to appear. At this hearing, the trial court entered a new child support worksheet. The new worksheet gave Father a credit of $111.98 per month for the child's health insurance and also gave Father a credit for his newborn child with his new wife. These new findings increased Mother's child support obligation to $450.00 per month.

Mother timely appealed.

### Issues

Mother raises one issue for review:  whether the trial court erred in designating Father as the Primary Residential Parent for the parties' child?

## Analysis

As an initial matter, we note that Mother has proceeded *pro se* in this appeal.[1] It is well settled that *pro se* litigants must comply with the same standards to which lawyers must adhere. ***Jackson v. Lanphere***, No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting ***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson*, 2011 WL 3566978, at *3. With the foregoing in mind, we turn to Mother's brief.

Unfortunately, our review is hampered in this case because Mother's brief, even on the one issue properly raised in her Statement of the Issues, is woefully deficient. We are directed only to consider those issues that are properly raised, argued, and supported with relevant authority. *See **Hawkins v. Hart***, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) ("In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position . . . ."). To this end, Rule 27 of the Tennessee Rules of Appellate Procedure specifically provides that an appellant's brief "shall contain":

> An argument, which may be preceded by a summary of argument, setting forth:

---

[1] Mother was represented in the trial court. During the trial court proceedings, however, Mother's attorney filed a Motion to Withdraw on April 17, 2014. The Motion to Withdraw was premised on Mother's alleged failure to cooperate and maintain contact with her attorney. In his motion to withdraw, Mother's attorney noted that Mother failed to follow the attorney's direction when Mother filed a *pro se*, handwritten motion to transfer the case to a different county. The basis for Mother's motion is unclear, but it was ultimately denied. However, Mother's attorney's Motion to Withdraw was eventually granted on May 13, 2014, several days after the trial court granted Father's petition to modify the parenting plan.

A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; . . . .

Here, Mother fails to cite any law or legal authority supporting her argument. "It is not the function of the appellate court to research and construct the parties' arguments." *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) (no perm. app. filed). While Mother's Argument section demonstrates that she disagrees with the trial court's modification of the parenting plan, she simply restates factual allegations and provides no legal basis or reasoning for why the trial court erred. This Court has repeatedly held that a party's failure to cite any authority for its argument leads to a waiver of the issue on appeal. *E.g.*, *Forbess v. Forbess*, 370 S.W.3d 347 (Tenn. Ct. App. 2011) ("[W]e cannot overlook Wife's failure to cite any applicable law in her brief . . . .").

In the same vein, Rule 27 also requires appellants to include a "table of authorities including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited." Tenn. R. App. P. 27(a)(2). Here, in her Table of Contents, Mother purports to include a Table of Authorities, but the pages given for the Table of Authorities merely list the pages occupied by her Statement of the Case and her Argument. She lists no case citation, statute, or any legal authority. Thus, her brief is deficient in this regard as well.

Last, Rule 27 also specifically directs appellants to include "appropriate references to the record relied on" in their appellate brief. Additionally, while Mother's brief does contain some citations to the record in her Statement of the Case and Statement of the Facts, it does not include any citations to the record within her Argument section. Moreover, Mother's brief refers to facts that do not appear in the record on appeal. Again, we note that it is "not the function of this Court to verify unsupported allegations in a party's brief." *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000). Thus, Mother's brief is in further contravention of Rule 27 for her failure to make appropriate references to the record.

Despite the fact that Mother's brief is inadequate, there are times when this Court, in the discretion afforded it under Tennessee Rule of Appellate Procedure 2, may waive the

6

briefing requirement to adjudicate the issues on their merits.[2] This is especially true in cases involving domestic relations where the interests of children are involved. However, in order for this Court to properly review the trial court's actions, the record must be in a proper posture to provide us a meaningful review. This Court's review is limited to the appellate record, and it is incumbent upon the appellant to provide a record that is adequate. ***Jennings v. Sewell-Allen Piggly Wiggly***, 173 S.W.3d 710 (Tenn. 2005).

Here, in addition to the shortcomings of her appellate brief, Mother has also failed to provide this Court with an accurate record, as the record on appeal lacks a transcript or a statement of the evidence presented at trial. Under Rule 24 of the Tennessee Rules of Appellate Procedure, the appellant has the duty to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues that form the basis of the appeal. The appellant's duty includes the burden of providing to this Court a transcript or statement of the evidence from which we can determine whether the trial court erred. ***Coakley v. Daniels***, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). In the absence of a transcript or statement of the evidence, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct. ***J.C. Bradford & Co. v. Martin Constr. Co.***¸ 576 S.W.2d 586, 587 (Tenn. 1979).

In this case, Mother did not file a transcript or a statement of the evidence in this Court.[3] While Mother's brief recites many factual allegations, a recitation of facts in an appellate brief does not constitute evidence and cannot be considered by the appellate court unless they are properly made a part of the record. ***Reid***, 388 S.W.3d at 295. We are mindful that Mother is a *pro se* litigant and that she is entitled to fair and equal treatment. However, she is "not excused from complying with applicable substantive and procedural law" imposed on represented litigants. ***Paehler v. Union Planters Nat'n Bank***, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). In this case, without a transcript or a statement of the evidence, we have no means of evaluating the evidence presented at trial. The lack of a transcript or statement of the evidence is fatal to Mother's appeal. Accordingly, we conclude that the

---

[2] Tennessee Rule of Appellate Procedure 2 provides, in relevant part, that:

> For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion.

[3] Mother filed a notice that the appellate record would not include a transcript or a statement of the evidence shortly after filing her notice of appeal.

7

inadequacies in Mother's brief and her failure to provide this Court an accurate record constitute a waiver of her issue on appeal.

Last, we address Father's request for attorney's fees incurred on appeal. Father does not designate his request for attorney's fees as an issue in his statement of the issues section of his appellate brief, nor does he provide any legal authority demonstrating why he is entitled to an award of attorney's fees. Again, we note that we are directed to only consider those issues that are properly raised, argued, and supported with relevant authority. *See Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001); *see also* Tenn. R. App. P. 27. This Court has previously stated that an appellee's failure to include a request for affirmative relief as an issue in its statement of the issues constitutes waiver on appeal. *Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that husband waived an issue by his failure to designate it as an issue in his statement of the issues). Accordingly, we conclude that Father has waived the issue of attorney's fees incurred on appeal.

## Conclusion

Based on the foregoing, we affirm the judgment of the Davidson County Circuit Court. This cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are assessed against Appellant Mother. Because Mother is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE