IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 19, 2015

# IN RE DONNA R.[1]

**Appeal from the Juvenile Court for Montgomery County**
**No. TPCV144322    Timothy K. Barnes, Judge**

_____

**No. M2015-00629-COA-R3-PT – Filed January 29, 2016**
_____

Father of a child who was determined to be dependent and neglected shortly after her birth had his parental rights terminated on the grounds of abandonment by an incarcerated parent – failure to support; failure to provide a suitable home and wanton disregard; failure to substantially comply with the requirements of the permanency plan; and persistence of conditions. Father appeals, asserting that the evidence does not sustain the trial court's findings relative to those grounds as well as the holding that termination was in the child's best interest. Father failed to appeal or argue one of the grounds for termination and, consequently, has waived that issue; the ground is thereby final and we decline to review the other grounds. Upon our review of the record, there is clear and convincing evidence that termination of Father's rights is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J. joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Curtis M.

Herbert H. Slatery, III, Attorney General and Reporter; and Rachel E. Buckley, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

## I. HISTORY

Donna A. R. ("Donna") was born in April 2013 to Tracey G. R. ("Mother") and Curtis M. ("Father").[3] On June 21, 2013 following receipt of a referral of a drug exposed child and reports of domestic violence in the home, the Department of Children's Services ("DCS") initiated a proceeding in the Montgomery County Juvenile Court to have Donna adjudicated dependent and neglected and to assume custody of her. Following a hearing on June 26, a Protective Custody Order was entered placing her in DCS custody, and on July 11 the first permanency plan was developed. The plan, which was ratified by the court on August 22, had "return to parent" as the goal and set forth responsibilities for both Mother and Father. Pertinent to the issues in this appeal, the plan required Father to make an effort to visit at least four hours per month; to address legal issues and provide verification to DCS; to complete a clinical assessment with a parenting/anger management component; to complete a domestic violence program if he planned to parent Donna with Tracey; and to undergo DNA testing to establish his paternity of Donna. The July 2013 permanency plan was signed by Mother, but DCS was unable to locate Father and he did not participate in the development of the plan or sign it. A second permanency plan was developed and signed by Father on January 10, 2014 with the permanency goals of "return to parent" and "exit custody with relative." Father's parental responsibility requirements were essentially the same as those in the July 11 plan with the added requirement that Donna would be provided with a safe and stable environment. The plan was ratified on March 27, 2014.

On December 18, 2014, DCS filed a petition to terminate the parental rights of Mother and Father on the following grounds: (1) abandonment by failure to support; (2) abandonment by incarcerated parent – non-support; (3) abandonment by failure to provide suitable home; (4) substantial noncompliance with permanency plan; and (5) persistence of conditions. The petition asserted the additional grounds of abandonment by incarcerated parent – wanton disregard, and failure to establish or exercise paternity as to Father only.

---

[2] Tenn. R. Ct. App. 10 states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[3] There is no father listed on the birth certificate; in 2014 Curtis M. ("Father") underwent DNA testing which confirmed that he is the biological father of Donna A. R.

The case was heard before the Montgomery County Juvenile Court on March 26, 2015.  At the outset of the hearing Mother surrendered her parental rights; she is not a party to this appeal.  On April 30, 2015, the court issued an order terminating the Father's parental rights on the grounds of abandonment by incarcerated parent – non-support; failure to provide suitable home; abandonment by incarcerated parent – wanton disregard; substantial noncompliance with the permanency plan; and persistence of conditions; the court determined that termination of Father's rights was in the best interest of Donna.  Father appeals, stating the following issue:

> The evidence of record is insufficient, as a matter of law, to sustain the Trial Court's finding that the State met the Tenn. Code Ann. § 36-1-113 criteria for terminating Appellant's parental rights to [Donna] by clear and convincing evidence.

## II.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007), *cert. den.*, 168 L.Ed.2d 729 (2007).  However, that right is not absolute and may be terminated in certain circumstances.  *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.* 154 S.W3d 586, 589 (Tenn. Ct. App. 2004).  The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights.  *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists.  Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence.  *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases.  A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence, that termination of the parent's rights is in the best interest of the child.  Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).  In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d).  *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004).  As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d).  *Id.*  We must then determine whether the facts, as found by the trial court or as supported by the

preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## III. DISCUSSION

As noted earlier, the trial court terminated Father's parental rights on five grounds: abandonment by incarcerated parent – non-support (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv) and -102(1)(D)); abandonment by failure to provide a suitable home (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii)); abandonment by incarcerated parent – wanton disregard (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv)); substantial noncompliance with the permanency plan (Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2)); and persistence of conditions (Tenn. Code Ann. §§ 36-1-113(g)(3)).

In his brief on appeal, Father addresses the grounds of abandonment by failure to support under the definition of abandonment at Tenn. Code Ann. § 36-1-102(1)(A)(i), and by failure to support by an incarcerated parent under the definition at Tenn. Code Ann. § 36-1-102(1)(A)(iv); wanton disregard; substantial non-compliance with the permanency plan; and persistence of conditions. The "abandonment by failure to provide a suitable home" ground has not been argued in Father's brief; consequently, it has been waived. *In re Alexis L.*, No. M2013-01814-COA-R3-PT, 2014 WL 1778261 at *2 (Tenn. Ct. App. April 30, 2014) citing *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011). As noted in *In re Alexis L.*, once an issue has been waived, the ground of termination has become final and addressing the remaining issues "would change nothing and amount to an advisory opinion." *Id.* In light of the finality of one ground for termination, we respectfully decline to address the remaining grounds.[4]

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[5] The list of factors in the statute is not

---

[4] We have, however, reviewed the record and find clear and convincing evidence in support of each ground for termination.

[5] The factors at Tenn. Code Ann. § 36-1-113(i) are:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after

exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *State of TN Dept. of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In the order terminating Father's rights, the court held the following with respect to Donna's best interest:

Here, the Court concludes that termination is in the child's best interest. Considering the factors in TCA 36-1-113(i), the Court finds that [Father] has failed to make an adjustment of circumstance, conduct or conditions as to make it safe and in the child's best interest to return home. [Father] is virtually in the exact same position his was when the child came into foster care, and [Father] has continued to engage in criminal activity, resulting in multiple convictions and arrests. [Father] has failed to effect a lasting adjustment after reasonable efforts by DCS to assist that the lasting adjustment does not reasonably appear possible. [Father] does not have stable housing, has not showed he can maintain sobriety, and has failed to complete the requirements to make it safe for the child to return home. Additionally, he has failed to make any payments whatsoever toward child support while his child has been in foster care.

The Court may also consider other factors when determining if termination of parental rights is in the child's best interest. The child is in a pre-

reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

5

adoptive home and is bonded with the resource parents. She is doing well in her placement and deserves stability. Based on these factors, the Court concludes that termination of [Father's] parental rights is in the child's best interest.

While Father argues in his brief that the court's legal conclusions "uses boilerplate verbiage which implicitly relies on assumptions made by [DCS Case Worker]", our review of the record shows that the court's factual findings in the best interest determination are supported by clear and convincing evidence and those findings support the ultimate issue. The court clearly reviewed the evidence and reached its own conclusions. The court's findings were supported by the testimony of several witnesses, including Father. Taken as a whole, the testimony showed, amongst other things, Father's lack of consistency in addressing the factors which led to Donna's removal and which necessitated his attention. Clearly he had not made a lasting adjustment of circumstances within the meaning of Tenn. Code Ann. § 36-1-113(i)(1) and (2); he had engaged in a pattern of domestic abuse and violence, Tenn. Code Ann. § 36-1-113(i)(6); he had not established a safe home environment, Tenn. Code Ann. § 36-1-113(i)(7); and he had not paid child support during the time Donna was in foster care, Tenn. Code Ann. § 36-1-113(i)(9). Significantly, the testimony showed that Donna, who was two years old at the time of trial, had been in foster care since she was two months old; was a normal, very active two year old who had established a bond with the foster family; had been in speech therapy for several months; and that the foster family wished to adopt her. We agree with the trial court that the stability in her life that Donna was experiencing was in her best interest.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

6