IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 20, 2017 Session

## BOBBY JOE PACK v. REBECCA SUZANNA ROTHCHILD

**Appeal from the Circuit Court for Knox County**
**No. 125048    Gregory S. McMillan, Judge**

_____

**No. E2016-00873-COA-R3-CV**

_____

This is an appeal from a final decree of divorce. The Appellant Rebecca Rothchild ("Mother") challenges the trial court's division of marital property, its designation of Bobby Pack ("Father") as the primary custodian of the parties' children, and its refusal to award her alimony. For the reasons stated herein, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Danny C. Garland, II, Knoxville, Tennessee, for the appellant, Rebecca Suzanna Rothchild.

Theodore Kern, Knoxville, Tennessee, for the appellee, Bobby Joe Pack.

## OPINION

### Background and Procedural History

Mother and Father married in January 2006. Two children, both boys, were born of the marriage. The parties' first child was born in December 2006. Their second child was born in March 2008.

After several years of marriage, Mother and Father separated in February 2012. The present litigation soon followed when Father filed a complaint for divorce in the Fourth Circuit Court for Knox County on June 7, 2012. In his complaint, Father asserted that he had been the children's primary care-taker prior to the separation. He further

contended that he was the proper person to act as the primary residential parent for the children. Although the case was subsequently referred to mediation, the parties were not able to settle their differences.

On October 2, 2014, Mother filed an answer to Father's complaint, as well as a counter-complaint for divorce. Whereas Father's complaint had asserted that he should be appointed primary residential parent for the children, Mother's counter-complaint contended that she should be designated for that role. Father filed an answer to Mother's counter-complaint on November 13, 2014, and a multi-day trial commenced the following summer. Trial proceedings concluded on February 3, 2016.

On March 31, 2016, the Fourth Circuit Court entered its order of divorce. In addition to declaring the parties divorced pursuant to Tennessee Code Annotated section 36-4-129, the court divided the parties' marital debts and assets, held that Father should be appointed primary residential parent, and dismissed Mother's claim for alimony. Mother timely appealed to this Court.

## Issues Presented

On appeal, Mother raises three issues for our review, which we have reworded as follows:

1. Whether the trial court erred when it granted Father primary custody of the children.

2. Whether the trial court erred in its division of the parties' debts and assets.

3. Whether the trial court erred when it did not award Mother alimony.

## Standard of Review

As a general matter, our review of a trial court's factual findings is de novo upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *Northland Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 916 S.W.2d 924, 926 (Tenn. Ct. App. 1995). With that said, "[a]n incomplete appellate record is fatal to an appeal on the facts." *Piper v. Piper*, No. M2005-02541-COA-R3-CV, 2007 WL 295237, at *4 (Tenn. Ct. App. Feb. 1, 2007). Indeed, absent an appellate record containing the facts, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) (citations omitted). The burden is on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence from which this Court can determine whether the evidence preponderates for or against a particular factual finding. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct.

App. 1992). Questions of law are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010) (citations omitted).

In domestic relations cases, trial judges are often tasked with making a number of discretionary decisions. *See, e.g.*, *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007) (citation omitted) ("[A] trial court has broad discretion regarding a custody determination."); *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (citation omitted) ("Because trial courts have broad discretion in dividing the marital estate, the division of marital property is not a mechanical process."). When reviewing a discretionary decision on appeal, we employ an abuse of discretion standard. "The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). This standard of review does not allow us to second-guess a trial court, as it "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Id.* (citations omitted).

Although less rigorous, the abuse of discretion standard does not immunize trial court decisions from appellate review. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002) (citation omitted). Indeed, the standard does "not prevent us from examining the trial court's decision to determine whether it has taken the applicable law and the relevant facts into account." *Id.* (citation omitted). A trial court abuses its discretion when "it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc.*, 312 S.W.3d at 524 (citations omitted).

**Discussion**

*Custody Determination*

We turn first to Mother's assertion that the trial court erred when it granted Father primary custody of the parties' children.[1] A trial court's decision concerning the custody of a child is one of the most important decisions confronting a trial court in a divorce case. *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006) (citation omitted). When reaching a decision regarding custody, "the needs of the child are paramount, and the desires of the parents are secondary." *Id.* (citation omitted). The child's best interest

---

[1]After holding that Father should be designated the primary residential parent, the trial court stated that "co-parenting, decision-making authority, and child support shall be as set out in the Permanent Parenting Plan proposed by Father and entered by this Court on March 15, 2016." We note that the parenting plan signed by the trial court actually reflects that it was signed on March *31*, 2016.

is the "polestar, the *alpha and omega*." *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

Although a trial court has broad discretion in making a custody determination, the ultimate decision must be based on the proof presented at trial and applicable principles of law. *Chaffin*, 211 S.W.3d at 286 (citation omitted). When choosing which parent should be designated as the primary residential parent, the trial court must conduct a comparative fitness analysis under Tennessee Code Annotated section 36-6-106. *See id.* Under that statute, the following factors must be taken into account, where applicable, when determining what is in a child's best interest:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a). These same factors are to be considered when fashioning a child's residential schedule. *See* Tenn. Code Ann. § 36-6-404(b) ("If the limitations of § 36-6-406 are not dispositive of the child's residential schedule, the court shall consider the factors found in § 36-6-106(a)(1)-(15).").

In this case, the trial court's analysis with respect to each of the respective factors in Tennessee Code Annotated section 36-6-106(a)(1)-(15) was as follows:

(1) The Court heard about the parties' co-parenting arrangements during the parties' separation. At times, there were periods where Father had long periods of time and then periods where he had every weekend with the children and at least one period where he went an extended time without seeing them due to Mother's actions. It is clear that each of them has a relationship with the children. The stability of their relationship has depended on Mother in that, prior to this Court's hearing in September 2015, she was the primary parent and unilaterally restricted Father's time due to her concerns about his parenting decisions. This factor favors Father.

(2) Mother has been the primary parent and has performed the majority of parenting responsibilities in the past. However, since September 2015, Father has stepped into this role and there was no indication at the hearing in October 2015 or the final day of trial on February 3, 2016 that he is not successfully performing parenting responsibilities. In July 2015, Mother was found in contempt for denying Father his co-parenting time. At a second hearing for Contempt, Mother refused to follow the Court's orders and expressed her ongoing intention to deny Father co-parenting time due to her belief that this Court's orders placed the children in danger. She persisted in that belief despite having had a full hearing in July on Father's first contempt hearing and a second evidentiary hearing in September 2015. She has further hindered the relationship through her words and actions. After Father said goodbye to the children saying "love you boys" Mother replied, in the boys' presence, "No he doesn't." Mother will not facilitate a relationship with Father if she is the primary parent.

(3) This factor is not at issue.

(4) Mother contended at trial that Father's nutritional choices were inconsistent with her instructions concerning the types of foods the children should be given to eat. Although Mother intimated that the instructions were due to medical advice, there was no such proof introduced in Court. She also complained of Father not doing the children's homework and not making them read as part of a summer reading program. Again, there was no proof of incomplete homework or academic issues, just assertions by Mother that Father was falling short of her opinion of what his efforts should be. For his part, Father testified about his efforts since July to ensure that the children's medical needs were being met. Exhibit 10 and Exhibit 11 document the difficulties that Father has had in that regard as a

- 6 -

result of Mother's interference. There was nothing in the proof to substantiate Mother's complaints of Father's inability to meet the children's needs or that they are or have been injured beyond normal childhood bumps and scrapes despite her testimony that he negligently supervises them during his co-parenting time. Since Father's assumption of primary parenting, there is no indication of educational issues.

(5) Mother has historically been the primary caregiver due to her role as stay-at-home parent. This consideration is offset by her more recent actions to minimize Father's role.

(6) It is clear that both parents love and have a bond with the children and the children with them.

(7) Mother testified about having the children in counseling. Father was able to testify about the children's work with the therapist although he was not an active participant. Mother testified that during the course of the divorce one of the children became more oppositional and physical with her. Father testified that he had not observed that behavior. Neither parent described children whose actions were outside the normal limits for children going through a high stress divorce. Father has shown that he will take action to see that the children's needs are met.

(8) Father's extra-marital relationship and his exposure to the children to it prior to the finalization of the parties' divorce was wrong. There was testimony that Mother discussed this relationship with the children, and attempted to use it against Father in an effort to align the children with Mother. Other than the moral harm and stress from being inappropriately involved, no harm was shown to the children. Mother's behavior in court while testifying and while court proceedings were ongoing give this court concern about her emotional stability and ability to cope with stress. More than most litigants, she was scattered, unable to collect and communicate her thoughts, and non-linear in her thinking. For example, after having been found in contempt, with the Court having explained its ruling to her, and the Court having announced its findings that specifically discounted Mother's bases for denying co-parenting, Mother continued to deny Father his co-parenting time. When asked after a second hearing, in which her proof was more or less the same as the first contempt hearing, if she would now comply, she affirmatively stated that she would not. A number of text exchanges between Mother and Father were entered into evidence as well. In them, Mother's tone, language, and use of punctuation suggest that she is highly emotionally volatile. This is consistent with the Court's observation of her during the numerous hearings in this case. In contrast, Father's

demeanor in court and for the most part in the communications between him and Mother was calm, rational, organized, and clear. This factor favors Father.

(9) This factor was not significant in the Court's consideration.

(10) The preference for continuity (continuing the Mother's primary residential responsibility and the children's stable residence with her) was outweighed by the Mother's actions as set forth herein.

(11) Mother asserted that Father's parenting failures (failure to adequately supervise the children's use of ATVs, failing to ensure use of safety equipment, making sure they didn't get sunburned and/or dry skin while swimming, and providing them non-approved food choices) constituted physical abuse. In addition, she testified about her issues with Father's discipline of the parties' younger child. As noted, the Court did not find these rise to the level of physical or emotional abuse. The Court, however, does find emotional abuse on the part of Mother based on the fact that, after she proposed substantial co-parenting time for Father (June 2015 Proposed Parenting Plan), she was actively denying Father any co-parenting time with the children and preventing the children from seeing Father.

(12) This factor was not a subject on which testimony was offered, and it was not taken into consideration.

(13) The parties' children were not heard from and they are not of an age []at which their preference must be considered.

(14) Father testified regarding his work schedule. Because his work begins early, he has made appropriate adjustments and accommodations to ensure that the parties' children's day to day activities and needs are met. The Court did not need to adjust the schedule as a result of Father's ability to get the children where they need to be and when they need to be there.

(15) There were no additional factors not set forth herein that were considered.

In reviewing the trial court's custody determination, we must begin by noting that our review is hampered due to the absence of a complete record on appeal. Whereas the trial court's divorce order reflects that the trial of this case took place over five separate dates, only two dates worth of transcripts are included in the record transmitted to us. Although several statements of evidence are also included in the record, none of these

statements correspond to a divorce trial date.[2] It is clear that a complete record of the trial proceedings is absent, and Mother's appellate counsel conceded this point at oral argument. As such, "we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod*, 849 S.W.2d at 783 (citations omitted).

In reviewing the factual findings that accompany the trial court's divorce order and the analysis included therein pursuant to Tennessee Code Annotated section 36-6-106(a), we cannot conclude that the trial court abused its discretion in awarding Father primary custody of the parties' children. Among other considerations, the trial court noted that Mother had unilaterally restricted Father's parenting time in the past, and it found that she would not facilitate a relationship with Father if she was designated the primary residential parent. The trial court also expressed concern over Mother's emotional stability, noting that the evidence suggested she was "highly emotionally volatile," in contrast to Father's "calm, rational, organized, and clear" demeanor. On appeal, we should only reverse a custody decision when the custody determination "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). In light of the factual findings included in the order of divorce, we cannot conclude that the trial court's custody determination falls outside the spectrum of reasonable results.

*Division of Property*

We next address Mother's contention that the trial court erred in its division of the parties' debts and assets. When dividing a marital estate incident to divorce, the trial court's goal and duty is to divide the marital property equitably. *Owens v. Owens*, 241 S.W.3d 478, 489-90 (Tenn. Ct. App. 2007) (citations omitted). Although the fairness of the trial court's decision "is inevitably reflected in its results," "[a] division of marital property is not rendered inequitable simply because it is not precisely equal[.]" *Id.* at 490 (citations omitted). The trial court has wide latitude in fashioning an equitable division of marital assets, *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (citation omitted), and as a reviewing court, we give great weight to the trial court's decision. *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997) (citations omitted). We will defer to the trial court's decision regarding property division unless it is inconsistent with the factors in Tennessee Code Annotated section 36-4-121(c) or is not supported by the preponderance of the evidence. *Brown*, 913 S.W.2d at 168 (citation omitted).

---

[2] In his brief, we note that Father raises a number of other deficiencies concerning the included statements of evidence, including the fact that the statements contain no certification of accuracy. *See* Tenn. R. App. P. 24(c) ("The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court[.]").

When an appealing party seeks to challenge a trial court's disposition of marital property, he or she must comply with Rule 7 of the Rules of the Court of Appeals. In relevant part, that Rule provides as follows:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

Compliance with Rule 7 serves an important appellate purpose. As we previously commented:

Valuation and division of property are perhaps two of the most complicated decisions a trial court must make in a divorce proceeding. Often when these issues are appealed, the record consists of volumes of trial transcripts and exhibits. Therefore, it is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the *entire* distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

*Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010) (internal citations omitted).

In this case, Mother has not complied with Rule 7. We note that in the argument section of her brief, she does provide three separate lists tabulating certain actions of the

trial court. The first list purports to tabulate the trial court's valuation of Father's separate property. The second list purports to tabulate the trial court's valuation of Mother's separate property. The third list then purports to outline the division of the valued marital property. As it is, none of this information is presented in a single table as contemplated by Rule 7. In this vein, we note that Rule 7 specifically "provides an exemplar for the proper designation and tabulation of marital assets." *Townsend v. Townsend*, No. W2004-02034-COA-R3-CV, 2005 WL 3416310, at *6 (Tenn. Ct. App. Dec. 14, 2005). However, aside from the fact that Mother failed to situate the required information in a single table in an appendix to her brief or in her brief's statement of facts, we note that none of the lists provided contain citations to the record for their entries. This runs further afoul of Rule 7, which specifically provides that "[e]ach entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found."

Here, given Mother's failure to comply with Rule 7, we hold that she has waived any issues relating to the trial court's division of property. Indeed, this Court has held on several occasions that the failure to adhere to the requirements of Rule 7 results in such a waiver. *See Akard v. Akard*, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at *5 (Tenn. Ct. App. Nov. 25, 2014) (citations omitted) ("No Rule 7 chart is contained in Husband's brief. Because of these deficiencies, any issues related to the division of marital property are waived."); *Durant v. Durant*, No. M2001-00691-COA-R3-CV, 2002 WL 772923, at *3 (Tenn. Ct. App. Apr. 30, 2002) (citation omitted) ("Because Ms. Durant failed to comply with Rule 7 of the Rules of the Court of Appeals of Tennessee, we decline to address this issue."). We further note that the Tennessee Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the appellant did not comply with our Court rules. *Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000) (citing *Crowe v. Birmingham & N.W. Ry. Co.*, 156 Tenn. 349, 1 S.W.2d 781 (1928)).

Although we hold that Mother has waived her grievances with respect to the trial court's property division, we briefly note that much of her argument appears to be misguided. For example, in arguing that the trial court failed to adequately consider the relative value of the parties' separate property pursuant to Tennessee Code Annotated section 36-4-121(c)(6), Mother's brief states that the trial court found that Father had $196,500.00 in separate assets. According to her brief, the largest of these assets supposedly owned by Father is a $150,000.00 home. We agree with Father that Mother's argument "is based on the incorrect inclusion of property owned by [Father's] parents as [Father's] separate property." Indeed, concerning the home Wife valued at $150,000.00, the trial court found that the "property belongs to Father's mother[.]"

*Alimony Claim*

Mother also asserts that the trial court erred when it did not award her any alimony. Under Tennessee law, "[t]here are no hard and fast rules for spousal support decisions." *Owens*, 241 S.W.3d at 493 (citations omitted). The decision to award alimony "hinge[s] on the unique facts of each case," *id.* at 494 (citations omitted), and trial courts possess broad discretion in determining whether an award of alimony is proper. *See Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005) (citation omitted). "As a general matter, we are disinclined to alter a trial court's decision unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes." *Brown*, 913 S.W.2d at 169 (citations omitted).

Here, the trial court rejected Mother's claim for alimony by making the following finding: "At trial, Mother failed to pursue her request for alimony through her testimony or cross-examination of Father. Having failed to prosecute her request, the Court declines to award alimony." As we interpret this finding, the trial court determined that Mother did not put forth evidence relating to her claim for alimony and thus failed to establish a sufficient factual basis for an award of spousal support. With respect to this issue, we again note that the absence of a complete record has hampered our review. Indeed, "[t]his court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod*, 849 S.W.2d at 783 (citations omitted).

Although Mother's brief argues that she raised a claim for alimony in her pleadings, as well as in her opening statement and closing argument at trial, the trial court specifically found that her claim was not pursued through the *proof*, i.e., "through her testimony or cross-examination of Father." Because there is no basis to overturn the trial court's factual finding on this issue given the incomplete record transmitted to us on appeal, we find no error in the trial court's denial of Mother's claim for alimony.[3]

*Attorney's Fees*

In closing, we note that Father's brief contains a request for an award of costs and expenses, including attorney's fees, pursuant to Tennessee Code Annotated section 27-1-122. Under that statute, this Court is entitled to "award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay." *Young v. Barrow*, 130 S.W.3d 59, 66 (Tenn. Ct. App. 2003). Here, Father's request for recovery under

---

[3] In connection with our review of this issue, we note that the transcripts appearing in the record preserve the testimony of only Father. Any direct testimony by Mother is not included. However, we further note that when Mother was cross-examining Father on the last date of trial, she stated as follows: "I don't want spousal support."

- 12 -

section 27-1-122 was presented in the argument section of his brief, but it was not presented as an issue for our review in compliance with Rule 27 of the Tennessee Rules of Appellate Procedure. Accordingly, the issue is waived. *See Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (citation omitted) ("We may consider an issue waived where it is argued in the brief but not designated as an issue.").[4]

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against the Appellant, Rebecca Suzanna Rothchild. Because Ms. Rothchild is proceeding *in forma pauperis*, execution may issue for costs if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[4] Although Tennessee Code Annotated section 27-1-122 does allow appellate courts to award damages on their own motion, we decline to do so in this case.