IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 14, 2017 Session

**IN RE T.W. ET AL.**

**Appeal from the Chancery Court for McMinn County**
**No. 2015-CV-346   Jerri Bryant, Chancellor**

———————————————————

**No. E2017-00317-COA-R3-PT**

———————————————————

In this termination of parental rights case,  J.B.H. and H.D.H. (prospective parents) filed a petition to terminate the parental rights of M.A.W. (mother) and E.R.W. (father) in order to adopt two of their minor children, T.W. and B.W. (the children).  S.A.G. (grandmother) and M.W.G. (grandfather[1]) are the maternal grandparents of the children. They joined the prospective parents as co-petitioners.  The trial court found clear and convincing evidence that mother and father abandoned their children by willfully failing to visit and support them during the relevant statutory time frame.  By the same quantum of proof, the court also determined that termination is in the best interest of the children. Consequently, the court entered an order terminating the parents' rights.  Mother appeals the trial court's order terminating her rights.[2]  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Andrew E. Bateman, Athens, Tennessee, for the appellant, M.A.W.

Randy Sellers, Cleveland, Tennessee, for the appellees, J.B.H., H.D.H., M.W.G., and S.A.G.

**OPINION**

**I.**

In March 2014, mother and father resided in Autauga County, Alabama, with

---

[1] M.W.G. is technically the step-grandfather of the children.
[2] Father was not present during the trial and did not appeal the trial court's order.

their two children, B.W. (eight months old) and T.W. (two years old). On March 14, 2014, mother pleaded guilty to theft of property and was subsequently incarcerated. Shortly thereafter, grandmother, who lives in Etowah, Tennessee, was informed that mother was in jail and that father was not taking proper care of the children. Grandmother then drove to Alabama and filed a petition with the Juvenile Court of Autauga County, Alabama, seeking emergency temporary custody of the children. On March 19, 2014, after determining that the children's "medical, nutritional, clothing, and shelter needs [were] not being met" and that the children were "being exposed to narcotics use, abuse, and sales," the court grant temporary custody to the grandparents.

A few months later, on June 25, 2014, the Juvenile Court of Autauga County entered a final order, which states, in relevant part, as follows:

> Based upon all evidence it is ORDERED as follows:
>
> The children remain dependent.
>
> The [grandparents] are granted full legal and physical custody of the minor children.
>
> . . .
>
> The Mother and Father shall attend and complete an intensive drug rehabilitation program and pass all drug tests. The parents are allowed telephone access to the children and may send letters/cards, etc. to the children.
>
> Upon completion of the drug program, proof of negative drug screens, proof of stable living arrangements and stable employment, the Mother and Father shall be allowed supervised visitation with the children to be supervised by Petitioners at times/places mutually agreed.
>
> Upon proof of continuous, consistent visitation by the parents, the parents may file for expanded visitation. . . .

(Paragraph numbering in original omitted.).

Upon entry of this order, grandparents returned to Etowah with the children. A few days later, on or around June 30, 2014, mother sent a birthday card containing $60 to T.W. at the grandparents' home address. Mother testified that she called her children on the telephone multiple times in the days that followed. According to grandmother, mother's calls "upset" the children because mother repeatedly told the children that she

- 2 -

would come to get them. Grandmother and mother both testified that in July 2014 the Alabama court revoked mother's right to call her children on the telephone and allowed grandmother to change her telephone number.[3] Grandmother owned two telephones; however, she testified that she only changed one of her telephone numbers.

In August 2014, pursuant to the Alabama court's order, mother moved to a drug rehabilitation facility. She completed the rehabilitation program in about one month; however, because mother wanted additional assistance, she voluntarily enrolled in two other rehabilitation programs and continued to seek treatment until May 2015. At some point during her rehabilitation treatments, mother gave birth to C.W., over whom she maintains custody and who is not a subject of the present litigation. Mother claims that, while she was in rehabilitation, she attempted to contact her other children by calling grandmother many times utilizing the telephone number that grandmother had not changed. According to mother, grandmother either did not answer her calls or "hung up in [her] face." Grandmother denies that mother ever tried to call her after the Alabama court supposedly suspended her right to telephonic communications. The trial court found grandmother's testimony more credible on this point.

In November 2014, mother filed a pro se petition in the Juvenile Court of Autauga County, Alabama, for reinstatement of her co-parenting rights. However, because the children were living in Tennessee and mother was living at a residential treatment center in Georgia, the Alabama court ultimately dismissed the petition for lack of personal jurisdiction.

Meanwhile, grandparents began allowing friends from their church, including prospective parents, to help look after the children. One of the prospective parents testified that he and his wife met the children in September 2014 and baby-sat them six or seven times over the next couple of months.

When grandfather's health began to decline in the fall of 2014, grandparents asked the prospective parents if they would be interested in helping with the children to a greater extent. The prospective parents agreed to baby-sit the children more frequently and in January 2015 the grandparents executed a power of attorney which gave the prospective parents the authority to make educational and healthcare decisions for the children. By March 2015, the prospective parents were keeping the children six to seven days a week; grandparents still routinely spoke to and visited the children, and the grandparents sometimes kept the children when one of the prospective parents had to work. Neither the grandparents nor the prospective parents informed mother or father of the children's new living arrangement.

---

[3] The trial court disregarded this testimony because neither party entered this order into the record.

In May 2015, mother was released from rehabilitation. Over the next few months mother did not own a vehicle. She lived with various relatives of her husband.[4] Mother worked at IHOP from September 2015 to October 2015. During this time, mother attempted to support herself and her newborn child, C.W. Mother also testified that she sent a Facebook message in September 2015 to a person whom she believed was grandfather. Grandfather died in January 2016 and was therefore unavailable as a witness; however, grandmother denied knowing anything about the Facebook message. Although the trial court did not make a specific finding with respect to the Facebook message, the court repeatedly questioned the credibility of mother's testimony.

On November 23, 2015, the prospective parents and the grandparents jointly filed a petition for termination of parental rights and adoption in the chancery court for McMinn County, Tennessee. On January 26, 2017, after a bench trial, the court entered an order terminating parental rights. On February 7, 2017, mother filed a notice of appeal. However, this Court determined, sua sponte, that mother's notice of appeal did not comply with Tenn. Code Ann. § 36-1-124(d) because mother did not personally sign the notice of appeal and instead allowed her attorney to sign for her. We entered an order directing mother to cure this perceived error. On February 28, 2017, mother filed an amended notice of appeal that contained her personal signature.

Petitioners then filed a motion to dismiss the appeal, alleging that this Court lacked jurisdiction because mother's amended notice of appeal was filed more than thirty days after entry of the trial court's order terminating parental rights. We denied the motion but did so "without prejudice to the ability of the appellees to raise the issue of the initial deficiency in the Notice of Appeal in their brief." We further stated that our order "directing the filing of an Amended Notice of Appeal should not be construed as a comment on whether the filing of the Amended Notice of Appeal cured any jurisdictional defect that might exist as a result of the deficiencies in the initial Notice of Appeal."

On June 1, 2017, this Court determined, again sua sponte, that the trial court's initial order terminating parental rights was not "a final judgment adjudicating all the claims, rights, and liabilities of the parties." We entered an order directing mother "to either secure an order from the Trial Court that complies with rule 54.02 and provides this Court with jurisdiction to consider this appeal, or show cause why this appeal should not be dismissed as premature." In response, on June 30, 2017, the trial court entered an amended final order terminating parental rights and granting adoption.

## II.

The parties raise the following issues in this appeal:

---

[4] The record does not reveal the precise whereabouts of father during this time, but at trial mother indicated that he was incarcerated during the months of September and October.

- 4 -

Whether mother untimely filed her amended notice of appeal such that this Court lacks subject matter jurisdiction.

Whether the trial court erred in finding clear and convincing evidence to terminate mother's parental rights on the ground of abandonment by failure to visit.

Whether the trial court erred in finding clear and convincing evidence to terminate mother's parental rights on the ground of abandonment by failure to support.

Whether the trial court erred in finding that clear and convincing evidence supports a finding that the termination of parental rights is in the best interest of the children.

## III.

As a threshold matter, we must determine whether mother untimely filed her amended notice of appeal. This inquiry is a question of law, which we consider de novo. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712-13 (Tenn. 2012) (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)).

Approximately one week after oral argument, the Supreme Court decided *In re Bentley D.*, wherein the Court held that "the signature requirement of Tennessee Code Annotated section 36-1-124(d) does not require a notice of appeal to be signed personally by the [appealing parent]." 537 S.W.3d 907, 915 (Tenn. 2017). The Court decreed that the signature of the parent's *attorney* was sufficient. *Id.* In light of this holding, we conclude that mother's original notice of appeal complied with the demands of the statute.

In any event, both the original notice of appeal and the amended notice of appeal were filed *before* the trial court entered a final judgment on June 30, 2017. Under Tenn. R. App. P. 4(a) we are required to treat a "prematurely filed notice of appeal . . . as filed after the entry of the judgment from which the appeal is taken and on the day thereof . . ." Applying this rule, we treat mother's original notice of appeal as timely filed, which allows us to exercise jurisdiction over this case.

## IV.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash–Putnam v. McCloud*,

- 5 -

921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Because termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.").

The Tennessee Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence

- 6 -

preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## V.

Tenn. Code Ann. § 36-1-113(g)(1) provides that parental rights may be terminated on the ground of abandonment. Tenn. Code Ann. § 36-1-102(1)(A)(i) further explains that "abandonment" includes "willfully fail[ing] to visit or . . . willfully fail[ing] to support" a child "[f]or a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent . . . ."

## A.

We first address the issue of whether mother willfully failed to visit the children during the operative four-month window. After our de novo review of the record, we have determined that the evidence preponderates in favor of many of the facts found by the trial court. However, we are not persuaded that the trial court considered all relevant facts or that the facts relied upon by the court provide clear and convincing evidence that mother's failure to visit was willful.

The trial court correctly identified the relevant statutory timeframe as July 23, 2015 to November 22, 2015. The evidence also preponderates in favor of the court's finding that mother did not personally visit the children during that time period. However, we have consistently held that the mere failure to visit or support a child is not clear and convincing proof of abandonment; rather, as the statute prescribes, such failure

must be willful. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). A party seeking to terminate parental rights has the burden of proving willfulness. **Carr v. Moore**, No. 01A01-9807-CH-00402, 1999 WL 820608, at *3 (Tenn. Ct. App., filed July 20, 1999). To carry this burden, a party must show that a parent "[was] aware of his or her duty to visit or support, ha[d] the capacity to do so, ma[de] no attempt to do so, and ha[d] no justifiable excuse for not doing so." **In re Adoption of Muir**, No. M2004-02652-COA-R3-CV, 2005 WL 3076896, at *5 (Tenn. Ct. App., filed Nov. 16, 2005) (footnote and citations omitted).

In finding that mother's failure to visit the children was willful, the trial court failed to consider the threshold question of whether mother had a duty to visit the children during the relevant four-month period.[5] This question can be conclusively answered by reference to the June 25, 2014 order entered by the Juvenile Court of Autauga County, Alabama. That order granted emergency temporary custody to grandparents and allowed mother only "telephone access to the children" as well as the ability to "send letters/cards, etc." Importantly, the order expressly conditioned any future supervised visitation "[u]pon completion of the drug program, proof of negative drug screens, proof of stable living arrangements and stable employment . . . ."

The trial court found that mother had completed a drug rehabilitation program; however, the trial court also found that mother was unemployed for approximately two of the relevant four months. Although the trial court made no specific finding regarding mother's living arrangements during this time, mother testified, without contradiction, that she did not own a vehicle and lived in Alabama with various relatives of her husband. Thus, the evidence preponderates in favor of a finding that mother had not obtained stable employment or stable living arrangements during the relevant four-month period. Consequently, mother was not entitled to supervised visitation under the Alabama court order, and therefore could not have had a "duty" to visit the children at that point in time.

We have previously held that "abandonment [by failure to visit] does not encompass failing to challenge a facially valid 'no contact' order." **In re H.A.L.**, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *4-*5 (Tenn. Ct. App., filed Apr. 25, 2005); *see also* **Carr**, 1999 WL 820608, at *3 (holding that a parent does not "willfully" abandon his or her child simply by failing to petition the court for reinstatement of visitation privileges that have previously been revoked). The Alabama court order effectively prohibited mother from visiting the children. We conclude that evidence in the record does not provide clear and convincing proof that mother's failure to visit the children was willful.

---

[5] Most of the court's discussion of "duty" relates solely to mother's duty to support the children, which we address in the next section of this opinion.

Even if the Alabama court order did not affect mother's duty to visit the children, we also have serious questions about mother's capacity to visit the children during the four-month period. The trial court found that mother did have the capacity to visit the children. The court relied upon the fact that mother failed to utilize resources apparently available to mother in rehabilitation that would have helped her regain custody of the children. For example, in its oral ruling, the court stated:

> [Mother] admits that she knew that in order to get co-parenting time she would need to file something either in Alabama or Tennessee. She was pro se in Alabama. She knew she could have been pro se in Tennessee. . . . She said rehab would not let her come to Tennessee, but she provided no proof of that. She admits that rehab did allow her to go from Georgia to Alabama.

The trial court also found that mother attended a rehabilitation facility that "provided such services as help to get a job and help to get children back and [mother] did not avail herself apparently of either of those services." Although the evidence preponderates in favor of these factual findings, mother's time in rehabilitation falls completely outside the relevant four-month window and is therefore not helpful in the present analysis.

The trial court also stated that mother "had a car for the last eight months [preceding the trial]." The evidence preponderates in favor of that finding; once again, however, those eight months do not coincide or overlap with the relevant four-month period. Mother testified, without contradiction, that she did not own a vehicle during the relevant four months, and the trial court did not make a specific finding rejecting that testimony. In this respect, the present case is analogous to *In the Matter of A.D.A.*, 84 S.W.3d 592, 598 (Tenn. Ct. App. 2002), wherein this Court held that a mother's failure to visit her children was not "willful" because her access to transportation was "substantially hampered" by the fact that she "did not own a car, and [was] dependent primarily upon her father, who works over sixty hours a week, for transportation."

To conclude our discussion of this issue, we reiterate that a preponderance of the evidence shows that mother had an affirmative duty *not* to visit her children until she satisfied the conditions of the Alabama court order. Further, a preponderance of the evidence shows that mother did not have the capacity to visit the children during the relevant time period. Therefore, petitioners failed to prove by clear and convincing evidence that mother's failure to visit the children was willful. The trial court erred in concluding otherwise.

## B.

We next address petitioners' theory of abandonment based on mother's alleged

failure to support the children.[6]  As stated above, petitioners have the burden of proving that mother failed to support the children during the four-month period and that such failure was willful.  *See In re Preston L.*, No. M2016-02338-COA-R3-PT, 2017 WL 4315356, at *6 (Tenn. Ct. App., filed Aug. 22, 2017).  The standard for determining willfulness in this context is the same as the standard for proving willfulness in the failure-to-visit context.  *See In re Adoption of Muir*, 2005 WL 3076896, at *5.

The trial court correctly observed that the law imposes a duty on parents to support their children, even when the parents lack custody of the children and regardless of whether a court has ordered the parents to pay support.  *See Kirkpatrick v. O'Neal*, 197 S.W.3d 674, 680 (Tenn. 2006).  The law also presumes a parent's knowledge of this duty to support.  *See id.*  Given this presumption, the evidence preponderates in favor of the trial court's determination that mother was aware of her duty to support.

Mother concedes that since losing custody of the children she has only provided token support, such as occasional birthday or holiday gifts, and even those small payments fall outside the relevant four-month period.  However, mother argues that she lacked the capacity to support the children during the relevant time period.  She alleges that her intermittent, low wage job at IHOP was insufficient to provide for herself, her newborn baby, and her other two children.  Mother also stated at trial that she could not provide support because she did not know where her parents lived.

The trial court credited mother's testimony that her only employment during the four-month period was at IHOP during the months of September and October.  However, petitioners did not introduce any proof with regard to mother's wages during that time.

The trial court disbelieved mother's testimony that she did not know where her parents lived, observing that mother had previously listed her parents' home address on her petition for co-parenting filed with the Alabama court in late 2014.  We respect the credibility determination of the trial court and conclude that the evidence preponderates in favor of the court's finding that mother knew where her parents lived.

The trial court also made a comment with respect to mother's failure to enroll in a government welfare program called "Families First."  Specifically, the trial court stated: "[Mother] keeps saying she's divorced and that she couldn't get Families First because

---

[6] At the conclusion of petitioners' argument with respect to failure to support, petitioners' brief states that mother "did not deny the allegation of abandonment by willful failure to support in her pro se Answer, which was never amended after she obtained counsel . . . ."  Petitioners' brief did not raise the issue of waiver in its statement of the issues, so we decline to address it.  *See Forbess v. Forbess*, 370 S.W.3d 347, 357 n.13 (Tenn. Ct. App. 2011) (citing *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)).  Moreover, under *In re Carrington*, we must "review the trial court's findings as to each ground for termination," and here the trial court made findings with respect to both failure to visit and failure to support.  483 S.W.3d 507, 525-26 (Tenn. 2016).

she was still married, or something along those lines, but I don't have any proof of that either." It is unclear whether and to what extent the trial court relied upon this finding. In any event, the court improperly shifted the burden to mother to prove that she was unable or unwilling to enroll in the government assistance program. Petitioners bore the burden of proving that mother was qualified to receive the additional assistance and that she affirmatively chose not to enroll.

Finally, although not expressly mentioned by the trial court, Mother's affidavit of indigency states that she had received food stamps in the amount of $500 since May 2015. The affidavit also states that mother's monthly expenses included $500 for food and $50 for a telephone.

As a matter of law, we conclude that the foregoing facts do not amount to clear and convincing evidence that mother's failure to support the children during the four-month period was willful. In **O'Daniel v. Messier**, we held that a mother's failure to support was not willful when she had only intermittent, part-time employment and was "forced to rely on federal assistance and help from other family members because she could not earn enough money to support her daughter and herself." 905 S.W.2d 182, 188 (1995), *superseded by statute on other grounds*; *see also **In re Alysia S.**, 560 S.W.3d 536, 570 (Tenn. Ct. App. 2014) ("Simply finding that Mother worked and was compensated at some point during the four-month period does not, by itself, mean that she had the ability to pay child support. The trial court did not make any findings regarding Mother's income, nor did it mention Mother's expenses."). In **O'Daniel**, we stated that failing to support a child is willful when such conduct is motivated by "conscious disregard or indifference to [one's] parental responsibilities," not merely "disadvantaged circumstances and family strife." 905 S.W.2d at 188.

In the present case, mother had just completed drug rehabilitation and was attempting to care for her newborn baby, C.W. She was unemployed for approximately two of the relevant four months and she lived with several different members of her husband's family. At trial, mother testified: "I was trying to get on my feet. I was trying to get on my feet and better myself so I had a place for my kids, so I had a job, so I had a place for my kids to go to." Although mother is certainly responsible for the disadvantageous circumstances in which she found herself, petitioners still bear the burden of proving that mother had a capacity to provide support and that mother consciously chose not to do so.

Petitioners simply did not carry that burden. No pay stubs from this time period were produced, and in the absence of additional evidence we decline to assume that mother's intermittent employment at IHOP provided sufficient funds to support a family of four. We doubt that mother's modest access to food stamps provided the additional income necessary to support herself and her three children. This is certainly not the type of evidence that "eliminates any serious or substantial doubt concerning the correctness

- 11 -

of the conclusions to be drawn from the evidence," as required by the clear and convincing evidence standard. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Accordingly, the trial court erred by concluding that clear and convincing evidence exists to show that mother willfully failed to support the children during the relevant time period.

## VI.

Because we have determined that the record does not contain clear and convincing evidence that grounds for termination exist, we do not reach the issue of whether termination of mother's parental rights is in the best interest of T.W. and B.W. *See In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 n.6 (Tenn. 2007); *In the Matter of Oliver Ray Valentine, Jr.*, 79 S.W.3d 539, 549 (Tenn. 2002). We emphasize, however, that nothing in this opinion should be construed as changing the custody of the children as it existed at the time of the hearing below.

## VII.

The judgment of the trial court is reversed. The costs on appeal are assessed to the appellees, J.B.H., H.D.H., M.W.G., and S.A.G. The case is remanded, according to applicable law, for further proceedings consistent with this opinion.

_____

CHARLES D. SUSANO, JR., JUDGE